2022-1621, 2022-1622, 2022-1777, 2022-1779

—————

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

—————

DRAGON INTELLECTUAL PROPERTY LLC,
*Plaintiff-Cross-Appellant*

v.

DISH NETWORK L.L.C.,
*Defendant-Appellant*

v.

ROBERT E. FREITAS, FREITAS & WEINBERG LLP,
*Respondents-Appellees*

—————

DRAGON INTELLECTUAL PROPERTY LLC,
*Plaintiff-Cross-Appellant*

v.

SIRIUS XM RADIO INC.,
*Defendant-Appellant*

v.

ROBERT E. FREITAS, FREITAS & WEINBERG LLP*,*
*Respondents-Appellees*

—————

Appeals from the United States District Court for the District of Delaware
C.A. Nos. 1:13-cv-02066-RGA, 1:13-cv-02067-RGA

—————

**UNIFIED PATENTS, LLC'S *AMICUS CURIAE* BRIEF IN SUPPORT OF
DISH NETWORK L.L.C. AND REHEARING EN BANC**

—————

Jonathan Stroud
Michelle Aspen
Unified Patents, LLC
4445 Willard Avenue
Suite 600
Chevy Chase, MD 20815
(202) 805-8931

William G. Jenks
*Principal Attorney*
JENKS IP LAW PLLC
1610 Allen St.
Reno, NV 89509
(202) 412-7964

*Counsel for Amicus Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2022-1621, 2022-1777

**Short Case Caption** Dragon Intellectual Property LLC v. DISH Network L.L.C.

**Filing Party/Entity** Unified Patents, LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/19/2024

Signature: /s/ William G. Jenks

Name: William G. Jenks

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Unified Patents, LLC | | Parents: |
| | | UP HOLDCO INC. |
| | | Unified Patents Holdings, LLC |
| | | Unified Patents Acquisition, LLC |
| | | Unified Patents Management, LLC |
| | | |
| | | No such public companies |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable           ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)     ☐   No     ☑   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable           ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

**Table of Contents**

INTEREST OF *AMICUS CURIAE* ............................................................................1

ARGUMENT ......................................................................................................2

I.     The Court Should Grant Rehearing En Banc to Preserve the
Discretion Congress Delegated to the District Courts Under
Section 285 ...............................................................................................2

II.    The District Courts May Impose Fee Liability on Those Responsible
for Making the Case "Exceptional" ...........................................................3

III.   The District Courts May Award Administrative Fees Regardless of
the Party Invoking Patent Office Review .................................................10

CONCLUSION .................................................................................................12

# Table of Authorities

**Cases**

*Amneal Pharms. LLC v. Almirall, LLC*, 960 F.3d 1368 (Fed. Cir. 2020) ..............10

*Backertop Licensing LLC v. Canary Connect, Inc.*,
107 F.4th 1335 (Fed. Cir. 2024) ............................................................5

*California Innovations Inc. v. Ice Rover, Inc.*,
No. 22-CV-01986 (D. Colo. Nov. 11, 2023) .............................................. 7, 8, 9

*Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399 (2012)..................2

*Dragon Intell. Prop., LLC v. Apple Inc. et al.*,
700 F. App'x 1005 (Fed. Cir. 2017) ...................................................11

*Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805 (Fed. Cir. 1990)....................12

*Nimitz Technologies LLC v. CNET Media, Inc.*,
No. CV 21-1247-CFC, 2023 WL 8187441 (D. Del. Nov. 27, 2023) ...................6

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) ...........3

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.*,
840 F.2d 1565 (Fed. Cir. 1988)...................................................... 10, 11

*Sullivan v. Hudson*, 490 U.S. 877 (1989) ...............................................10

*Webb v. Dyer County Board of Education,* 471 U.S. 234 (1985) ..........................11

*WPEM, LLC v. SOTI Inc.*, 837 F. App'x 773 (Fed. Cir. 2020) ...............................8

*WPEM, LLC v. SOTI Inc.*, No. 18-cv-00156, (E.D. Tex. Nov. 26, 2019)............8, 9

**Statutes**

35 U.S.C. § 285 ................................................................................ passim

**Other Authorities**

Adam Shartzer & Josh Carrigan, Patent Fee-Shifting Often Leaves Prevailing
Parties Unpaid, Law360 (Dec. 8, 2022),
https://www.law360.com/articles/1556062/ .........................................4

iv

Sean Keller and Jonathan Stroud, *Litigation Funding Disclosure and Patent Litigation*, 33 Fed. Cir. Bar. J. 77 (2023)............................................................1, 4

Unified Patents, *Litigation Annual Report*,
https://portal.unifiedpatents.com/litigation/annual-report ....................................2

Unified Patents, *Patent Dispute Report: 2023 in Review*,
*https://www.unifiedpatents.com/insights/2024/1/8/patent-dispute-report-2023-in-review*...............................................................................................................1

**Rules**

Fed. R. App. P. 29 .....................................................................................................1

Unified Patents, LLC is a membership organization dedicated to deterring non-practicing entities ("NPEs"), particularly patent assertion entities ("PAEs") and litigation investment entities ("LIEs"), from extracting nuisance settlements from operating companies based on patents that are likely invalid. Unified's 3,000-plus members are Fortune 500 companies, start-ups, automakers, industry groups, cable companies, banks, credit card companies, technology companies, open-source software developers, manufacturers, and others dedicated to reducing the drain on the U.S. economy of baseless litigations asserting infringement of patents of dubious validity.

Unified and its counsel study the business models, financial backings, and practices of PAEs and LIEs. *See, e.g.*, Unified Patents, *Patent Dispute Report: 2023 in Review*, *https://www.unifiedpatents.com/insights/2024/1/8/patent-dispute-report-2023-in-review*; *see also* Sean Keller and Jonathan Stroud, *Litigation Funding Disclosure and Patent Litigation*, 33 Fed. Cir. Bar. J. 77 (2023) ("Keller & Stroud"). Unified monitors ownership data, secondary-market patent sales,

---

[1] All parties to the appeal have consented to the filing of this brief. No party's counsel authored this brief in whole or in part; no party or party counsel contributed money that was intended to fund preparing or submitting the brief; no person—other than the *amicus curiae*, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. P. 29(a)(2), (a)(4).

demand letters, post-issuance proceedings, and patent litigation. *See, e.g.*, Unified Patents, *Litigation Annual Report*, https://portal.unifiedpatents.com/litigation/annual-report.

Unified files post-issuance administrative challenges here and abroad against low-quality PAE patents it believes are invalid. Thus, Unified deters the assertion of such patents. Unified acts and litigates independently from its members.

## ARGUMENT

### I. The Court Should Grant Rehearing En Banc to Preserve the Discretion Congress Delegated to the District Courts Under Section 285

Section 285 grants the district courts power to award fees in exceptional cases. 35 U.S.C. § 285. To understand the scope of that power, the courts "begin where all such inquiries must begin: with the language of the statute itself." *Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 412 (2012) (cleaned up).

Section 285 reads:

> The court in exceptional cases may award reasonable attorney fees to the prevailing party.

The text limits who may receive an award—"the prevailing party"; when they may receive an award—"in exceptional cases"; and what may be awarded—"reasonable attorney fees." It does not limit who may be charged with the fees. And it does not exclude fees for "voluntary" defensive actions.

These decisions are left to the sound discretion of the district court. In this respect, the "text is patently clear. It imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). *Octane Fitness* previously rejected this Court's exceptional-case standard. 572 U.S. at 550-551. The Federal Circuit's "framework" was "unduly rigid, and it impermissibly encumber[ed] the statutory grant of discretion to district courts." 572 U.S. at 553.

Likewise, the panel opinion establishes a rigid framework by creating two extra-statutory bright-line rules, unduly cabining the district court's discretion.

## II. The District Courts May Impose Fee Liability on Those Responsible for Making the Case "Exceptional"

The panel held "that liability for attorneys' fees awarded under § 285 does not extend to counsel." Slip Op. at 10. Respectfully, this holding too broadly and categorically insulates lawyers. Today, much of patent litigation is driven and controlled by lawyers and other non-party actors. Often, the entity bringing suit, the "litigant," has no assets, working capital, or income. It is an alter ego of a repeat player designed to insulate activity from consequence. It cannot pay its own lawyers' fees, much less satisfy a fee award.

One study of Section 285 awards found that roughly one-third of all Section 285 awards went unpaid or unsettled. Adam Shartzer & Josh Carrigan, Patent Fee-

Shifting Often Leaves Prevailing Parties Unpaid, Law360 (Dec. 8, 2022), https://www.law360.com/articles/1556062/.  The vast majority of unpaid fee awards come from NPE cases.  "NPEs account for almost 90% of the cases where fees were assessed but never paid."  *Id.*

In such cases, there is no "non-prevailing party"; there is only a stack of legal fictions designed to insulate the person responsible from accountability.  *See* Keller & Stroud at 96-98.  An actor incorporates an LLC for the patent and enlists an unaffiliated individual to serve as the owner and sole managing member.  *See id.* at 97 (citations omitted).  These entities then use "insolvency to avoid sanctions and fee-shifting awards across cases and assertion campaigns for years.  *See id.* (citations omitted).

This is no theoretical concern.  Multiple cases show that lawyers control or allow non-parties to control these litigations.  The panel opinion helps insulate these lawyers and encourages this behavior.

### *Deleware*

In *Backertop*, the District of Delaware found that two entities not before the court, IP Edge and Mavexar, had masterminded a longstanding scheme that required cooperation of the representing attorneys.  As this Court summarized, IP Edge and Mavexar:

> created [multiple] plaintiff LLCs, recruited outside
> individuals to serve as their sole owners; assigned patents

4

> to the plaintiff LLCs for little or no consideration;
> retained the rights to the majority of royalties and
> settlement proceeds; and reported a complete assignment
> to the [PTO]—all without disclosing IP Edge's ongoing
> rights in any patent-related proceedings

*Backertop Licensing LLC v. Canary Connect, Inc.*, 107 F.4th 1335, 1338 (Fed. Cir. 2024) (citations omitted).

The attorneys representing the LLCs did not take direction from the titular owners:

> The District Court found that IP Edge and Mavexar then
> directed infringement litigation asserting those patents—
> including <u>overseeing the attorneys</u> and agreeing to
> settlements—with seemingly little to no input from the
> plaintiff LLCs' owners.

*Id.* (emphasis added). These attorneys were "filing, settling, and dismissing litigation at the direction of Mavexar, a non-legal consulting firm, **without the informed consent of the plaintiff** LLCs' owners." *Id.* (emphasis added) (citations omitted).

As the scheme unraveled, the attorneys representing Backertop LLC sought to withdraw, one citing an inability to "effectively communicate with Backertop in a manner consistent with good attorney-client relations." *Id.* at 1339 (cleaned up). The district court sent its decision to the owner's employer because "Backertop's attorneys had indicated in their motions to withdraw that they were not in contact with [the owner]." *Id*. at 1340.

The district court has detailed similar occurrences concerning Lamplight Licensing LLC and Mellaconic IP LLC.  *See Nimitz Technologies LLC v. CNET Media, Inc.*, No. CV 21-1247-CFC, 2023 WL 8187441 (D. Del. Nov. 27, 2023).

The legal owner of Mellaconic "makes his daily living as the proprietor of a food truck and restaurant."  *Id.* at *10."  Mellaconic owns only patents, one of which it has asserted in 44 patent infringement cases across nine federal judicial districts.  *Id.* at 11.  Mellaconic's owner had not looked over the patents, didn't pay for the patents, and gave up nothing to acquire the patents.  *Id*. at 11-13.  He receives 5% of the proceeds from any patent litigation and apparently assumes all liability should things go wrong.  *Id.* at 11-12; *see also id.* at 12 n.10.

Lamplight is legally owned by a healthcare worker.  *Id.* at 23.  Lamplight has similar assets and history, though its owner has been unavailable to testify for health reasons.  *Id.* at 18-19, 26.  Lamplight's attorney had no apparent communication with Lamplight's owner before filing six cases (and moving to dismiss four of them) in Lamplight's name.  *Id.* at 24.

In both cases, "Mellaconic and Lamplight assume all the risk when Mavexar has attorneys assert their respective patents in infringement litigation."  *Id.* at 32. Under the panel opinion, the only persons within the court's power are the LLCs, with no assets, and the owners, likely judgment-proof.  The true bad actors, including the attorneys, are protected.

<u>*Colorado*</u>

Recently, a dispute arose in the District of Colorado when new counsel charged prior counsel, Mr. William Ramey, with failing to competently represent their client, particularly in failing to serve any discovery requests whatsoever. Show Cause Order Directed to Attorney William P. Ramey III, *California Innovations Inc. v. Ice Rover, Inc.*, No. 22-CV-01986, Dkt. #58 at 1-2 (D. Colo. Nov. 11, 2023) ("Ramey Show Cause Order").

The court ordered Mr. Ramey to identify the "number of times in the past three years that Mr. Ramey, Ramey LLP, or the clients of Ramey LLP have been sanctioned by any court or bar disciplinary body, including any public or private censures, and any orders to pay attorney's fees for any reason." *Id.* at 3. It also required him to provide the number of pending sanctions or attorney fee motions. *Id.*

Mr. Ramey identified six cases where he was counsel, and a court issued Section 285 sanctions. *See* Declaration of William P. Ramey, III, *California Innovations*, Dkt. #61-1, ¶ 11 (Dec. 14, 2023) ("Ramey Declaration").

Mr. Ramey also identified nine additional cases with fee motions pending. Ramey Declaration at ¶ 11. New counsel filed a counter affidavit, identifying two additional Section 285 sanction cases in the three-year window. *California Innovations*, Dkt. #66, ¶ 4. Eight sanction cases and nine pending motions present

quite a number for a firm employing only 6-8 lawyers over that period. *See* Ramey Declaration at ¶ 10.

It should be noted that, despite this burgeoning record, Mr. Ramey was not sanctioned in *California Innovations*. The dispute devolved into whether Mr. Ramey rightly expected the litigation funder to act as a law firm and provide discovery support. *Compare* Dkt. #61-1 at ¶ 4 *with* Dkt. #66 at 1. Instead of delving into how a lawyer and litigation funder could be confused over who was responsible for litigating the case, the court discharged the show cause order.

<u>*Texas*</u>

In one of the sanction cases identified by Mr. Ramey, *WPEM, LLC v. SOTI Inc.*, this Court affirmed the award of attorney fees taxed to the patent owner, WPEM, without delving into the circumstances of that LLC's formation or control. 837 F. App'x 773, 774 (Fed. Cir. 2020).

The Eastern District of Texas, however, had done so and heard testimony from lawyers involved. *See WPEM, LLC v. SOTI Inc.*, No. 18-cv-00156, Dkt. #51 (E.D. Tex. Nov. 26, 2019) ("WPEM Hearing"). WPEM was represented by Mr. Ramey, then of Ramey & Schwaller, at the hearing. *Id.* at 3. During the hearing it came to light that the plaintiff's "corporate representative," its "registered agent," and its "managing member" was another Ramey & Schwaller attorney.

> Q. So you're -- you're an attorney at the same law firm as Mr. Ramey; is that correct?

> A. Yes.

*Id.* at 24:24-25:1; *id*. at 24:16-18 (corporate representative), 24:19-20 (registered agent); 28:22-25 (managing member).

The district court also heard testimony that the same intimate relationship existed between patent-owning LLC and law firm in two other instances. For both Nanovapor 310, LLC and NetSoc LLC, the attorney testified that while Mr. Ramey represented them in patent disputes, the attorney was their corporate representative or manager. *Id.* at 25:10-27:11. Indeed, NetSoc was the plaintiff in two of the Section 285 cases identified in *California Innovations*. *See California Innovations* Dkt. #66 ¶ 4.

Here, the panel refused to impose fees, reasoning that a party's attorney cannot be liable for the party's substantive litigation position. Slip Op. at 12. But counsel is responsible for the substantive litigation positions when the litigating "party" is little more than a legal fiction. And in a system where one attorney can be linked to a half-dozen-plus Section 285 awards over just 3 years—with no sign of being deterred—it is perhaps unwise to insulate all attorneys from Section 285 liability without a clear Congressional exemption.

In circumstances where the only natural persons within the court's grasp may be unsophisticated "owners," this en banc Court should reconsider whether a bright-line rule excusing attorneys is required.

## III. The District Courts May Award Administrative Fees Regardless of the Party Invoking Patent Office Review

The panel barred awarding fees "incurred in the voluntarily undertaken parallel IPR proceedings" under Section 285. Slip Op. at 10.  The opinion relies on *Amneal Pharms. LLC v. Almirall, LLC*, 960 F.3d 1368 (Fed. Cir. 2020) and distinguishes *PPG Indus., Inc. v. Celanese Polymer Specialties Co.,* 840 F.2d 1565 (Fed. Cir. 1988).  *Id.* at 8-10.

But in *Amneal*, this Court rejected the fee request because the appellee there could not meet the standards satisfied by the petitioner here.  Citing *Sullivan*, the Court explained, "fees could be awarded for administrative proceedings that are 'intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees.'" *Amneal*, 960 F.3d at 1372 (quoting *Sullivan v. Hudson*, 490 U.S. 877, 888 (1989)).  But that applied only "where a suit has been brought in a court, *and* where a formal complaint within the jurisdiction of a court of law *remains pending and depends for its resolution upon the outcome of the administrative proceedings*."  *Id.* at 1372 (cleaned up) (emphasis in original).

While *Sullivan* involved the Equal Access to Judgment Act, the analysis in *Amneal* leads to the same outcome here—including administrative fees in the fee award. Here, the IPR followed a suit brought by the patentee and was so "intimately tied to the resolution of the judicial action" that the IPR resolved the suit. *See Dragon Intell. Prop., LLC v. Apple Inc. et al.*, 700 F. App'x 1005, 1006 (Fed. Cir. 2017) (infringement appeal "moot" after PTAB affirmed).

In *PPG*, this Court allowed fees from an inter partes reissue proceeding after distinguishing the fees disallowed in *Webb v. Dyer County Board of Education,* 471 U.S. 234 (1985). *PPG*, 840 F.2d at 1568. But in *Webb*, as in *Amneal*, the fees at issue were expended before any case was filed. *Webb*, 471 U.S. at 242. *Webb*, 471 U.S. at 242. So, there was no difficulty "identifying the dividing line between the administrative proceeding and the judicial proceeding." *Webb*, 471 U.S. at 243.

Here, the IPR and infringement action are inextricably linked—the IPR mooted the infringement action. Thus, Dish is "entitled to reasonable attorney fees based upon the premise that the reissue [here, IPR] proceedings substituted for the district court litigation on all issues considered by the PTO and the Board." *PPG*, 840 F.2d at 1569.

*PPG* and the panel opinion cannot peacefully coexist. A patentee usually appears in an IPR involuntarily. If they prevail in an exceptional case, the district

court can award attorney fees.  But should an accused infringer prevail in an exceptional case, the district court cannot award attorney fees because the filing is "voluntary," even if the need to raise a defense is not.

This Court rightly rejected such a lopsided application of Section 285 in *Eltech Sys. Corp. v. PPG Indus., Inc.*:  "[T]here is and should be no difference in the standards applicable to patentees and infringers who engage in bad faith litigation."  903 F.2d 805, 811 (Fed. Cir. 1990).  The Court should grant en banc review before this imbalance becomes entrenched.

## CONCLUSION

The petition should be granted.

Respectfully submitted,

By          */s/ William G. Jenks*
            William G. Jenks
            wjenks@jenksiplaw.com
            JENKS IP LAW PLLC
            1610 Allen St.
            Reno, NV 89509
            (202) 412-7964

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS**

1.       This brief complies with the type-volume limitation of Fed. Cir. R. 35(g)(3).  It contains <u>2,499</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2.       This amicus brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Times New Roman 14-point font.

*/s/ William G. Jenks*
William G. Jenks

**CERTIFICATE OF SERVICE**

I hereby certify that, on Aug. 19, 2024, I caused to be electronically filed the foregoing UNIFIED PATENTS, LLC'S *AMICUS CURIAE* BRIEF IN SUPPORT OF DISH NETWORK L.L.C.'S AND REHEARING EN BANC using the Court's CM/ECF filing system.

I certify that all counsel of record in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. *See* Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).

*/s/ William G. Jenks*
William G. Jenks